**In the Matter of Robert T. MILLER.**

No. 53S00–9203–DI–164.

Supreme Court of Indiana.

March 7, 1997.

F. Thomas Schornhorst, Bloomington, for Respondent.

Donald R. Lundberg, Executive Secretary, David B. Hughes, Staff Attorney, Indianapolis, for Indiana Supreme Court Disciplinary Commission.

## DISCIPLINARY ACTION

PER CURIAM.

The Disciplinary Commission has charged the respondent, who was during relevant times a county prosecuting attorney, with assisting the cause of a civil plaintiff by investigating and prosecuting a concurrent criminal action against the civil defendant. Pursuant to Ind.Admission and Discipline Rule 23, Section 11(c), the parties have tendered to this Court an agreed resolution of the charges. That agreement is now before us for final approval.

The respondent was admitted to the bar of this state in 1980. The parties agree that in February 1987, a group of unit owners (the "plaintiff") at a Monroe County planned residential community (the "community") brought a civil action for damages and other relief in Monroe County against certain individuals and entities. One of the several defendants in the civil action was a director (the "director") of the community's service association (the "association"), an incorporated entity. The civil pleadings alleged that the director and other co-directors of the service association had engaged in a number of irregularities in management of the community. Specifically, the plaintiff alleged, *inter alia*, that the director and others upgraded the community's television reception system, enhanced the system with satellite service, and sold the equipment to an independent cable company along with a covenant not to compete. The cable company paid the director $120,000 pursuant to that transaction. Neither plaintiff's counsel nor plaintiff ever alleged in pleadings or during pre-trial or trial proceedings that the director committed theft or other criminal acts in connection with the sale of the television equipment. However, payment of the $120,000 was not disclosed until the later stages of the civil trial.

On March 31, 1989, following a bench trial, the trial court issued a 40–page judgment, therein deciding a number of issues in favor of the director and his co-defendants. However, the court also found that the director had breached a fiduciary duty to the association by appropriating a corporate opportunity by establishing television service and later selling it, along with the covenant not to compete, to an independent cable company. The judgment ordered the director to pay the association $117,210 out of a total judgment against all defendants of approximately $278,000. The Indiana Court of Appeals later reduced the judgment to approximately $30,000. *Kirtley v. McClelland,* 562 N.E.2d 27 (Ind.Ct.App.1990). In addition, the trial court awarded plaintiff's counsel attorney fees against the association in excess of $60,000.

On April 26, 1989, the plaintiff filed a motion to correct errors and therein, for the first time in the case, requested treble damages. Essentially, the motion alleged that the director committed theft by his transaction with the cable company. At about the same time, the plaintiffs unsuccessfully sought settlement with the defendants of payment of the judgment prior to appeal. In April or May of 1989, plaintiff's counsel met with the respondent and presented to him a copy of the judgment in the civil action, and posited that the evidence in the civil action supported a criminal case of theft, conspiracy to commit theft, and perhaps perjury against the director and others. Plaintiff's counsel also provided the respondent with portions of depositions of the director and his wife. Before his meeting with plaintiff's counsel, the respondent had conducted no criminal investigation into the matter.

In June 1989, plaintiff's counsel again met with the respondent, this time with two Indiana State Police officers present. Plaintiff's counsel again advised the respondent and the state police of his opinion that the director had committed criminal acts by his transaction with the cable company. Plaintiff's counsel suggested tactics to obtain evidence to establish the director's criminal intent. During the course of the meeting, the

police officers indicated they believed no crime had been committed. In support of the plaintiff's motion to correct errors, on June 19 and 20, 1989, plaintiff's counsel argued in open court that the plaintiff was entitled to treble damages because the director had committed theft in connection with the cable television sale. On June 19, 1989, the respondent announced publicly that a complaint had been filed with his office by some of the community's unit owners and that he was investigating whether criminal charges should be filed. A member of the law firm representing the director in the civil case contacted the respondent to learn the status of the criminal investigation. The respondent told the attorney that he was investigating certain allegations and promised to meet with the director's civil counsel before filing criminal charges. The respondent later made the same statements to a member of the law firm on June 25, 1989. Thereafter, without informing or meeting with the director's civil counsel, the respondent told plaintiff's counsel that he was going to prosecute the director.

On June 28, 1989, the respondent charged the director with theft, a Class D felony, by information filed in Monroe Circuit Court. Shortly thereafter, a summons was issued to the director. In light of the summons, no probable cause hearing was held and no probable cause affidavit filed. The respondent alleged that probable cause that the director committed theft or criminal conversion of corporate assets was established by several assertions, including, *inter alia*, the following: (1) that corporate documents supported a conclusion that the association owned all present and future cable television distribution rights for units at the community; (2) that the director purchased a satellite television system for use by the community without the consent of the members or the association's board of directors; (3) that the director began providing cable service without revealing his financial interest in the enterprise; (4) that the director grossed approximately $10,000 during the first six months of the service; (5) that on July 1, 1984, the director sold the cable distribution

rights to an independent cable company and that the contract memorializing the sale specified that the association owned all present and future television distribution rights for the community and that the stated consideration for the conveyance of the rights was the purchaser's promise to provide television service at specified monthly service rates; (6) that on the same day, the director privately agreed with the cable company to accept $120,000 from it for the cable equipment the respondent had purchased for about $13,000, along with a covenant not to compete. The director kept the funds for his own use and failed to reveal the payment to the association, until, over his objection, the late stages of the civil trial;[1] and (7) that the trial court judge ruled that the profits derived from the sale of the television distribution rights belonged to the association.

The director secured separate defense counsel after the criminal action was filed. Thereafter, the respondent informed the director's defense counsel that he was willing to move to dismiss the criminal charges if the director would settle the civil action through agreement with the plaintiff's counsel and his clients. Criminal defense counsel asked what would happen in the event of a good faith but ultimately unsuccessful effort at resolution. The respondent replied that he would move to dismiss under such circumstances. As a direct consequence of that exchange, on August 31, 1989, the director submitted a detailed settlement offer to the plaintiff. Included therein was provision for the immediate payment of $101,500 to settle the trial court judgment. The respondent received a copy of the settlement offer on September 7, 1989, and thereafter advised the director's defense counsel that he was going to move to dismiss the criminal information. He also agreed to request a continuance of a pre-trial conference scheduled for September 28, 1989, during which time he would explain to plaintiff's counsel his reasons for seeking dismissal.

On October 30, 1989, plaintiff's counsel advised the association in writing that the

**1.** When asked during a pre-trial deposition if he had made a profit from the sale of the television equipment, the director stated: "I can't recall the numbers. I might have made a buck on it."

plaintiff would not consider the proposed settlement and demanded payment of the judgment in full. He also advised the defendants that their proposed appeal had no chance of succeeding. On November 22, 1989, a status conference was held in the criminal action. The respondent did not move to dismiss the criminal action and, in fact, informed criminal defense counsel that he had discussed the matter with certain individuals before concluding that the director should pay an additional $20,000 over the original settlement offer in order to obtain dismissal of the action. Following the conference, the respondent promptly informed plaintiff's counsel of his demand that the director pay an additional $20,000. During this time, the respondent knew or should have known that the director had filed a full cash bond to stay enforcement of the trial judgment pending appeal.

During the pendency of the criminal action, the trial court issued several discovery orders with which the respondent failed to comply, including orders entered November 22 and December 11, 1989. On December 20, 1989, the court ordered the respondent to comply with the previous orders by January 12, 1990 or risk dismissal of the action. The respondent persisted in failing to comply, and, on May 24, 1990, the court dismissed the criminal action. The respondent filed identical criminal charges against the director on May 25, 1990, in Monroe County. Those charges were later dismissed because the statute of limitations had expired. On October 31, 1990, the Indiana Court of Appeals reversed in part the decision and judgment of the trial court in the civil action, finding with respect to the cable sale agreement that the proper amount of judgment against the director was $10,367, which represented the amount of profit the director earned during the six months he owned the cable system. The director expended substantial funds in defending himself against the two criminal actions.

We find that by acting to advance the cause of a civil litigant while serving as the duly-elected county prosecutor, the respondent engaged in conduct prejudicial to the administration of justice, in violation of Ind.Professional Conduct Rule 8.4(d).[2] By failing to make a reasonably diligent effort in the criminal action to comply with the legally proper discovery requests of an opposing party, the respondent violated Prof.Cond.R. 3.4(d).[3]

The parties agree that the respondent should be publicly admonished for his misconduct. In support of the proposed sanction, they point to various factors in mitigation. This Court may consider such factors in its overall assessment of appropriate discipline. *In re Buker*, 615 N.E.2d 436 (Ind.1993). Specifically, the parties contend that the respondent filed the initial criminal information in the face of imminent expiration of the applicable statute of limitations, thereby suggesting that he was under pressure to file the action without adequate evaluation of its merits. They contend also that, based on the trial court judge's civil judgment, the respondent assumed that the amount the director withheld from the association was $120,000 and that neither the director's civil nor criminal defense counsel ever suggested during negotiations that the amount should have been lower. Finally, they assert that the issue of whether a theft offense occurred did not depend on the alleged taking of a certain dollar amount or the posting of an appeal bond in the civil case. Although we attribute some mitigating value to some of these factors, they do not diminish the fact that the respondent purposely used his prosecutorial authority to assist plaintiff's counsel in collecting a civil judgment. The agreed facts reveal that the respondent instituted an investigation of the director based solely on the respondent's communications with the plaintiff's counsel. The respondent thereafter used formal prosecution of the director as a bargaining tool on behalf of the

---

**2.** Professional Conduct Rule 8.4(d) provides:
    It is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice.

**3.** Professional Conduct Rule 3.4(d) provides:

A lawyer shall not in pretrial procedure, make a frivolous discovery request or fail to make reasonably diligent effort to comply with a legally proper discovery request by an opposing party.

civil plaintiff. His actions reflect improper collusion between an elected prosecutor and a private civil plaintiff. He exacerbated his misconduct by failing to comply with proper discovery requests in the criminal case, then, following dismissal based on his inaction, resurrecting the case after expiration of the statute of limitations. We accept the proffered sanction in this case due only to our desire to encourage agreed resolution of disciplinary cases. Given the nature of the misconduct, we would have favored a harsher sanction had this matter been litigated.

It is therefore ordered that the respondent, Robert T. Miller, is hereby reprimanded and admonished for the misconduct set forth above.

The Clerk of this Court is directed to give notice of this action pursuant to Admis.Disc.R. 23, Section 3(d) and to provide to the clerk of the United States Court of Appeals for the Seventh Circuit, to the clerk of each of the Federal District Courts in this state, and to the clerk of the United States Bankruptcy Court in this state the respondent's last known address as reflected in the records of the Clerk.

Costs of this proceeding are assessed against the respondent.