ATTORNEYS FOR THE RESPONDENT
Kevin P. McGoff
James J. Bell
Indianapolis, Indiana

ATTORNEYS FOR THE INDIANA SUPREME COURT
DISCIPLINARY COMMISSION
G. Michael Witte, Executive Secretary
David B. Hughes, Staff Attorney
Indianapolis, Indiana

FILED

Jan 12 2012, 3:21 pm

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 30S00-0911-DI-535

IN THE MATTER OF:

NANCY J. FLATT-MOORE,

*Respondent.*

Attorney Discipline Action
Hearing Officer Karen M. Love

**January 12, 2012**

**Per Curiam.**

We find that Respondent, Nancy J. Flatt-Moore, engaged in attorney misconduct by surrendering her prosecutorial discretion in plea negotiations entirely to the pecuniary demands of the victim of the crime. For this misconduct, we find that Respondent should receive a public reprimand.

This matter is before the Court on the report of the hearing officer appointed by this Court to hear evidence on the Indiana Supreme Court Disciplinary Commission's "Verified Complaint for Disciplinary Action," and on the post-hearing briefing by the parties. Respondent's 1998 admission to this state's bar subjects her to this Court's disciplinary jurisdiction. See IND. CONST. art. 7, § 4.

**Background**

Findings of Fact. The Hearing Officer filed her "Hearing Officer's Report," which contained her proposed findings of fact, on April 21, 2011. Concluding that these proposed findings are supported by the evidence, we accept them as summarized below.

In April 2006, "JH" ordered agricultural products from "Big Rivers," paying with three checks totaling $68,956.91, which were all dishonored for insufficient funds. Big Rivers later claimed that JH owed Big Rivers $11,934 in addition to the amount of the three checks, asserting that it had made a billing error by under-pricing one of the items sold to JH. On July 26, 2006, an information was filed against JH based on the three dishonored checks, charging JH with Class C felony Check Fraud under Ind. Code § 35-43-5-12.[1]

A newly elected prosecutor for Hancock County, Dean Dobbins ("Dobbins") took office in January 2007. Jerry Bean ("Bean") served as Chief Deputy. In early 2007, Respondent joined the prosecutor's office as a deputy prosecutor and was assigned to prosecute the JH case.

Dobbins' campaign ads stated that Dobbins would have a policy of police and victim approval of felony plea agreements. Respondent testified that the prosecutor's policy required the approval of law enforcement and the victim before the office would agree to plea agreements. Based on Dobbins' testimony, however, the hearing officer found that the policy of the prosecutor's office did not include giving the victim of a property crime the right to dictate the terms of restitution as a pre-condition to his office agreeing to a plea.

In May 2007, after communicating with an attorney representing Big Rivers regarding its monetary demands, Respondent offered a plea agreement under which JH would plead guilty to

---

[1] Check Fraud is a generally a Class D felony, but it is a Class C felony if the aggregate amount of property obtained is at least $25,000.

Class D felony Check Fraud but would be convicted and sentenced as a Class A misdemeanor pursuant to Ind. Code § 35-50-2-7,[2] on the condition that Respondent agree to whatever terms and amounts Big Rivers was demanding ("First Plea Offer").

Big Rivers demanded that JH pay Big Rivers $108,501.60 on or before August 1, 2007, which was nearly $40,000 more than the principal amount of the three dishonored checks. The difference consisted of (1) Big Rivers' alleged billing error of nearly $12,000; (2) $9,500 in attorneys' fees; and (3) over $18,000 in interest, calculated at 18% interest per annum. JH objected to these amounts as excessive and requested that the matter of the amount of restitution be decided by the judge. Big Rivers would not agree to that, and Respondent likewise refused to agree, telling defense counsel: "I don't have authority to make an offer that the victim doesn't agree to. You're trying to sell the wrong person. Go sell Big Rivers. If they agree, I don't care what it is."

JH decided to take the First Plea Offer because it the only way he could resolve the matter on a misdemeanor basis short of trial. When questioned by the judge, JH stated that he had entered into the plea agreement as a free and voluntary act without force or threats. JH, however, did not pay the full amount of $108,501.60 by the due date, and Respondent had the plea agreement withdrawn. By late November 2007, JH had paid Big Rivers the principal amount of the three dishonored checks, plus 8% interest, for a total of $76,908.08.

Respondent sent a fax to counsel for JH, saying that counsel for Big Rivers wanted the 18% interest to continue until all items were paid in full. On November 29, 2007, Respondent faxed a new plea offer ("Second Plea Offer") to counsel for JH. The Second Plea Offer stated:

> I am making an offer that would conclude the criminal case. It would leave any additional civil issues for Mr. [JH] and Big Rivers to determine between themselves, by whatever means, at a later date and without intervention of the criminal courts. In exchange for a plea of guilty to the Class D felony lesser included, the State would agree to the following sentence: 18 months at the

---

[2] This statute provides that, in certain circumstances, if a person has committed a Class D felony, "the court may enter judgment of conviction of a Class A misdemeanor and sentence accordingly."

3

[Indiana Department of Correction], all suspended, with Defendant retaining the right to petition for AMS [i.e., alternative misdemeanor sentencing] after successful completion of probation. Terms of probation include repayment as restitution of the face value of the dishonored checks, plus 8% interest from the date of the issuance of the checks until the full face value has been paid. It is my understanding the restitution terms I propose on the criminal case have already been met. It is not a term of probation, nor a requirement for consideration of AMS sentencing, that your client pay any claims made by Big Rivers as to the civil aspects of the case, as those issues are outside the consideration of the criminal case. . . . .

Thus, the Second Plea Offer, which was approved by either Dobbins or Bean, did not depend on JH's concession to Big Rivers' demands for additional payments. And, in contrast to the First Plea Offer, the Second Plea Offer would not allow for immediate conviction and sentencing as a Class A misdemeanor.

JH's counsel did not inform JH of the Second Plea Offer.[3]  Respondent did not follow up to ensure that counsel had received the fax and that JH had been informed.   After a jury trial, JH was convicted of Class C felony Check Fraud, and the Indiana Court of Appeals affirmed in an unpublished decision. After the criminal conviction, Big Rivers filed a civil lawsuit against JH seeking, among other things, treble damages, attorneys' fees, reimbursement for expenses, and 18% interest. (The outcome of the civil suit is not disclosed in the record.)

The Commission's Charges. The Commission charged Respondent with violating Rule 1.7(a)(2) by representing a client (the State) when the representation would be materially limited by the attorney's responsibilities to a third person (Big Rivers), i.e., by allowing Big River to advance its own interests in dictating the terms of restitution required to resolve the JH criminal case by a plea agreement. The hearing officer concluded that that Commission had not met its burden of proof on this charge, and the Commission does not challenge this conclusion. We therefore summarily accept the hearing officer's conclusion on this charge.

The Commission also charged Respondent with violating Rule 8.4(d) (engaging in conduct prejudicial to the administration of justice) by allowing Big Rivers to dictate as a

---

[3] It is unclear whether JH's attorney received the fax making the Second Plea Offer. He has since died.

4

condition of the First Plea Offer an amount of restitution that would have exceeded what was allowed by Indiana Code § 35-50-5-3 ("Restitution Statute") and was thus "extra-legal." The hearing officer concluded that Respondent violated this rule, and Respondent seeks review of this determination.

## Discussion

Propriety of Surrendering to a Crime Victim Prosecutorial Discretion in Plea Negotiations. The core of the Commission's complaint against Respondent is that she improperly allowed the victim of a crime to dictate the terms of a plea agreement, including provisions that the trial court could not impose.

A criminal defendant is not entitled to a plea offer of any sort and is free to reject any plea offer that is not acceptable to him or her. A criminal defendant may consent to a sentence that would be otherwise unauthorized to gain benefits in a plea agreement. For example, in Stites v. State, 829 N.E.2d 527 (Ind. 2005), this Court upheld the trial court's denial of post-conviction relief to a defendant who pled guilty and then alleged that the court lacked statutory authority to order the sentence she agreed to. Noting that the defendant had received a significant benefit from her plea agreement, we held that she could not be heard to complain after striking this favorable bargain.

Here, had JH been able to comply with the First Plea Offer's terms, he would have avoided a felony conviction, which he believed would have harmed him greatly in his business, and any executed sentence. In light of this considerable benefit, the requirement in the agreement that he pay his victim in excess of what the Restitution Statute may have allowed the criminal court to impose would not necessarily render the agreement illegal or otherwise improper. And he had no entitlement after this agreement failed to a second plea offer that would allow immediate conviction and sentencing as a Class A misdemeanor.

Respondent, however, did more than just include in a plea offer, at a victim's request, a restitution amount in excess of what the court could order under the Restitution Statute. Rather,

5

Respondent ceded to Big Rivers the entirety of restitution decisions with respect to the First Plea Offer, permitting Big Rivers to use the criminal case, without prosecutorial oversight, as leverage in its civil dispute with JH.

In Matter of Miller, 677 N.E.2d 505 (Ind. 1997), a plaintiff who obtained a $117,210 civil judgment against a defendant for breach of fiduciary duty suggested that the prosecutor conduct a criminal investigation. The prosecutor charged the defendant with theft but expressed willingness to dismiss if the defendant would settle the civil action. The plaintiff refused to accept the defendant's initial $101,500 settlement offer. The prosecutor informed the defendant that he should pay $20,000 above the offer to obtain dismissal of the criminal charges. Eventually, the criminal action was dismissed for the prosecutor's failure to comply with discovery orders, and the civil judgment was reduced to $10,367 on appeal. The Court held that the prosecutor engaged in conduct prejudicial to administration of justice and approved an agreed public reprimand. "[T]he respondent purposely used his prosecutorial authority to assist plaintiff's counsel in collecting a civil judgment. . . . His actions reflect improper collusion between an elected prosecutor and a private civil plaintiff." Id. at 508-09. In another case, the Court emphasized its hope that "all prosecutors routinely exercise full prosecutorial discretion" and the importance of "ensuring an optimum environment in which to do so." Matter of Curtis, 656 N.E.2d 258, 260 (Ind. 1995).

This is not to suggest that prosecutors may not allow crime victims to have substantial and meaningful input into plea agreements offered to the offenders at whose hands they suffered. But by giving Big Rivers unfettered veto power in the plea negotiations leading up to the First Plea Offer, Respondent entirely gave up her prosecutorial discretion to enter into what would otherwise be a fair and just resolution of the charges. If a prosecutor puts the conditions for resolving similar crimes entirely in the hands of the victims, defendants whose victims are unreasonable or vindictive cannot receive the same consideration as defendants whose victims are reasonable in their demands. At very least, such a practice gives the appearance that resolution of criminal charges could turn on the whims of victims rather than the equities of each case.

Respondent's asserted defenses. Respondent argues that even if there were improprieties in the plea negotiations, she relied in good faith on the policies of her supervisors, Dobbins and Bean. She thus contends that she has a defense under Professional Conduct Rule 5.2(b), which states: "A subordinate lawyer does not violate the Rules of Professional Conduct if that lawyer acts in accordance with a supervisory lawyer's reasonable resolution of an arguable question of professional duty."

Although Respondent may have believed that Dobbins' office policy required victim approval of plea offers, there was conflicting evidence on this matter and the hearing officer resolved it against Respondent. This seems supported by the fact that just a few months after the First Plea Offer, Respondent sought and obtained approval from either Dobbins or Bean of the Second Plea Offer, which did *not* require Big Rivers' approval.

Respondent also argues that disciplining a deputy prosecutor based on acts of prosecutorial discretion violates the separation of powers. We disagree. Prosecutors and their deputies must follow the Rules of Professional Conduct in plea bargaining and other acts involving prosecutorial discretion, and they may be disciplined by this Court when they fail to do so. *See* Matter of McKinney, 948 N.E.2d 1154 (Ind. 2011); Matter of Ryan, 824 N.E.2d 687 (Ind. 2005); Matter of Miller, 677 N.E.2d 505 (Ind. 1997).

Violation and Discipline. We conclude that Respondent violated Rule 8.4(d) by allowing Big Rivers unfettered veto power in plea negotiations with JH and that she has failed to establish a defense under Rule 5.2(b). Noting that Respondent did not act out of any selfish or dishonest motive and that she has no prior disciplinary history, we conclude that she should receive a public reprimand.

## Conclusion

The Court concludes that Respondent engaged in conduct prejudicial to the administration of justice in violation of Indiana Professional Conduct Rule 8.4(d) by surrendering her prosecutorial discretion in plea negotiations entirely to the pecuniary demands

of the victim of the crime. For Respondent's professional misconduct, the Court imposes a public reprimand.

The costs of this proceeding are assessed against Respondent. The hearing officer appointed in this case is discharged.

The Clerk of this Court is directed to give notice of this opinion to the hearing officer, to the parties or their respective attorneys, and to all other entities entitled to notice under Admission and Discipline Rule 23(3)(d). The Clerk is further directed to post this opinion to the Court's website, and Thomson Reuters is directed to publish a copy of this opinion in the bound volumes of this Court's decisions.

All Justices concur.