David R. CAMM, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 87A01–1102–CR–25.

Court of Appeals of Indiana.

Nov. 15, 2011.

---

Stacy R. Uliana, Richard Kammen, Gilroy Kammen Hertzel & Moudy, Indianapolis, IN, Attorneys for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Joby D. Jerrells, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Appellant-defendant David R. Camm appeals the trial court's denial of his petition for the appointment of a special prosecutor pursuant to Indiana Code Section 33–39–1–6(b)(2). More particularly, Camm argues that the trial court erred when it found that the prosecutor's now cancelled literary contract did not constitute clear and convincing evidence of an actual conflict of interest. Camm further contends that the trial court erred when it required that he show harm in order to prove an actual conflict of interest. Concluding that prosecutor's literary contract created an irreversible, actual conflict of interest with his duty to the people of the state of Indiana, we find that the trial court erred when it denied Camm's petition. Thus, we reverse and remand for the appointment of special prosecutor and for further proceedings consistent with this opinion.

## FACTS[1]

This case comes to us on interlocutory appeal. Camm now faces his third trial

---

1. We heard oral argument on October 4, 2011, at Vincennes University. We would like to thank the school's administration, fac-

and second retrial for allegedly shooting and killing his wife, seven-year-old son, and five-year-old daughter at the family home in Georgetown. In the prior two trials, Camm was convicted of all three murders, but the convictions were overturned on appeal.

A panel of this court reversed Camm's convictions from the first trial after finding the State's evidence of Camm's extramarital affairs prejudicial. The panel then remanded for retrial. *Camm v. State,* 812 N.E.2d 1127, 1142 (Ind.Ct.App.2004). Following the retrial, our Supreme Court reversed Camm's convictions after determining that the trial court had committed reversible error when it admitted hearsay evidence and speculative evidence that Camm had molested his daughter. *Camm v. State,* 908 N.E.2d 215 (Ind.2009). But, our Supreme Court found that the evidence presented at the second trial was sufficient to support the convictions and, therefore, remanded the case for retrial. *Id.* at 229.

Keith Henderson is the Floyd County Prosecutor and served as prosecutor for Camm's second trial. At midday on March 3, 2006, hours before the jury reached a verdict in the second trial, Literary Agency East, Ltd. sent Henderson's wife an email together with a literary representation agreement to find a publisher for a book Henderson intended to write about the Camm case. On March 10, 2006, Henderson signed the agreement. On March 28, 2006, the trial court sentenced Camm to life without parole.

Frank Weimann served as Henderson's agent. Henderson, with his initial co-author Steve Dougherty, wrote a sixty-page proposal for his forthcoming book about the Camm case, which Weimann sent to several publishers. On June 3, 2009,

Weimann negotiated a publishing agreement with Berkley Penguin Group (Penguin) for Henderson's book, tentatively titled, "Sacred Trust: Deadly Betrayal." Henderson and his new co-author, Damon DiMarco, each received an advance of $1,700 and agreed to deliver a manuscript to the publisher by August 1, 2009.

After our Supreme Court reversed Camm's conviction following the second trial, Penguin decided to delay any decision to move forward with the book until our Supreme Court ruled on the State's petition for rehearing. On July 30, 2009, Henderson sent an email to Weimann raising several concerns should the State's petition for rehearing be denied. In that email, he wrote the following:

> Frank, as you know Camm was reversed. On Monday, the State filed for reconsideration. I should know within 60 days or so the Court's decision. If the reversal stands, I will make a decision on whether or not to bring him to trial for the third time. If there is a third trial, I anticipate it occurring spring to summer of 2010.
>
> *I am committed to writing the book as is Damon. A tremendous amount of work has been done to this point. It's a great story that needs to be told.* However, the book can not come out prior to the completion of a potential third trial. It would jeopardize the case, potentially getting me removed from the case due to certain disclosure and opinions we are writing in the book. This can not happen. In addition, as you and Damon have discussed, this is now a bigger story.
>
> At a minimum, I want the publisher to acknowledge and agree to a pushed back time frame that allows me to do my job and not jeopardize justice for Kim,

ulty, and students for their hospitality and counsel for their excellent oral argument.

Brad, and Jill. They may be thinking that already, I simply need the acknowledgment. After that, I would like for you to push for something more out of the contract either on the front end or the back. That issue I will leave for your judgments and persuasion skills.

Finally is the issue of the advance check. I am concerned that by cashing the check, I and Damon are acquiescing to the publisher's time frame in the agreement notwithstanding the problems I cited above. If the worst case scenario occurs and the publisher wants to put a book on the shelf prior to the completion of a potential third trial, I would have no choice but to void the contract and hopefully start over after completion.

Appellants Ex. F at G (emphasis added.) Weimann communicated Henderson's concerns to Penguin. Penguin believed that the best solution to avoid compromising Henderson was for him and his co-author to return the advance checks and cancel the contract. It also suggested that they could "always start over again after the completion of the legal process." Appellant's Ex. H at M.

Henderson and Penguin cancelled the contract in September 2009. He and his co-author subsequently returned their advance checks. Penguin never received a copy of a manuscript for the proposed book. No agreement exists between Henderson and Penguin to produce a book about the Camm case in the future.

On November 30, 2009, our Supreme Court denied the State's petition for rehearing, and, the next day, Henderson refiled the murder charges against Camm. Later that same day, Camm filed a verified petition for appointment of special prosecutor seeking the removal of Henderson as prosecutor. On December 2, 2009, Henderson issued a press release responding to Camm's petition for a special prosecutor in which he stated that the publishing agreement he had for a book about the Camm case had been cancelled after the second trial was reversed. Appellant's Ex. J. He also stated that he was "more convinced now than ever that when this matter is completed, the unedited version of events needs to be told." *Id.* In a December 3, 2009, press release, he announced that he would retry Camm and reiterated his statements from the prior day's press release. Appellant's Ex. K. Henderson also filed with the trial court a response stating "that the agreement to publish a full account of the investigation and trials ... was conditioned on the affirmation by the Supreme [Court] with full understanding that the agreement would be terminated in the event of reversal" and that "upon receiving notice of reversal of this case by the Indiana Supreme Court, the agreement to publish an account of the investigation and trial was immediately terminated by the prosecutor." Appellant's Ex. M.

The trial court held a hearing on the petition. Camm called Dean Norman Lefstein, a professor of law and Dean Emeritus at Indiana University School of Law, to testify on his behalf.[2] Dean Lefstein has an extensive background in legal ethics scholarship. Dean Lefstein testified that Henderson's actions evinced a conflict of interest under the Indiana Rules of Profes-

---

2. Dean Lefstein served as the Dean of the Indiana University School of Law—Indianapolis from 1998 to 2002. He served as Chairman of the American Bar Association Section of Criminal Justice in 1986–1987; and as Reporter for the Second Edition of ABA Crim-

inal Justice Standards Relating to *The Prosecution Function* and *The Defense Function. Providing Defenses Services,* and *Pleas of Guilty.* Dean Lefstein also has served as Chairman of the ABA Committee on Criminal Justice Standards.

sional Conduct and the American Bar Association's Standards for Criminal Justice. Particularly, Dean Lefstein testified that Henderson's actions are a conflict of interest under Indiana Rules 1.7 (conflict of interest current client) and 1.8(d) (conflict of interest, literary rights.)

On January 7, 2011, the trial court issued an order denying Camm's petition for a special prosecutor. It found Henderson was no longer a party to any agreement to author a book about the Camm case, but he might pursue such a deal in the future. It also found that a manuscript for the book exists but that Henderson claims not to have seen it nor does he possess the book as it is the product of his co-author. In light of these findings, the trial court concluded:

> The defense had presented "some evidence" of a "potential conflict" but there has been no showing that the prosecutor's past book agreement has affected his prosecution of the case for the people of the State of Indiana. For example, even though the case has now been reversed twice and the prosecutor has chosen to proceed to trial for a third time, that decision has not been shown to be against the State's interests by "clear and convincing" evidence as even our own Supreme Court held that there is sufficient evidence for a jury to find the defendant guilty at trial.

Appellant's. App. p. 251. The trial court acknowledged that it had heard evidence of how the book agreement could affect Henderson's loyalties and decision but had heard no evidence that the agreement had affected those loyalties or decisions. Additionally, the trial court noted that it has no authority to determine whether Henderson had committed any ethical violations.

On January 20, 2011, Camm filed a motion to certify the trial court's order for interlocutory appeal, which the trial court granted. Camm, without objection from the State, requested that this court accept jurisdiction. On March 11, 2011, we accepted jurisdiction. Camm now appeals.

## DISCUSSION AND DECISION

■ Camm argues that the trial court erred when it denied his petition to disqualify Henderson and appoint a special prosecutor. More specifically, Camm contends that an actual conflict of interest exists because, when Henderson signed the literary contract, he irreversibly divided his loyalties between his personal interests in his book and his duties as a prosecutor for the people of the State of Indiana. Camm also argues that, in denying his petition, the trial court erroneously required him to show harm in order to prove an actual conflict of interest.

■ We will review a trial court's denial of a petition for special prosecutor for an abuse of discretion. *State ex. rel. Steers v. Holovachka*, 236 Ind. 565, 575, 142 N.E.2d 593, 597 (1957). "An abuse of discretion is an erroneous conclusion and judgment, one clearly against the logic and facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.* (quoting *McFarlan v. Fowler Bank City Trust Co.*, 214 Ind. 10, 14, 12 N.E.2d 752 (1938)). An abuse of discretion also occurs when the trial court misinterprets the law. *Thornton–Tomasetti Engineers v. Indianapolis–Marion Cnty. Pub. Library*, 851 N.E.2d 1269, 1277 (Ind.Ct.App.2006).

■ The appointment of a special prosecutor in Indiana is governed by Indiana Code Section 33–39–1–6. Indiana Code Section 33–39–1–6(b)(2) provides, in pertinent part, that the trial court may appoint a special prosecutor if a person files a verified petition requesting the appointment of a special prosecutor and the court

finds by clear and convincing evidence that appointment is necessary to avoid an actual conflict of interest. The petitioner has the burden of producing evidence of an actual conflict. *Kubsch v. State*, 866 N.E.2d 726, 734 (Ind.2007).

■ The purpose of the special prosecutor statute is to protect the State's interest in preserving the public confidence in the criminal justice system and ensuring that the prosecutor serves the ends of justice. *See State ex rel. Kirtz v. Delaware Circuit Court No. 5*, 916 N.E.2d 658, 659 (Ind.2009). In criminal proceedings, the prosecutor represents the interests of the State; and, "like any other client, the State is entitled to undivided loyalty." *In re Matter of Ronald L. Davis*, 471 N.E.2d 280, 281 (Ind.1984); *see also In re McKinney*, 948 N.E.2d 1154, 1160 (Ind.2011).

■ For the purposes of the special prosecutor statute, an actual conflict of interest arises where a prosecutor places himself in a situation inherently conducive to dividing his loyalties between his duties to the State and his personal interests. *In re Goldsmith v. Newman*, 686 N.E.2d 857, 860 (Ind.Ct.App.1997). As a general rule, appointment of a special prosecutor may be required if the elected prosecutor has a special interest in the outcome of the case. *Jones v. State*, 901 N.E.2d 655, 658 (Ind. Ct.App.2009).

The Indiana Rules of Professional Conduct are instructive as to whether a prosecutor's interest in literary rights constitutes a conflict of interest. Rule 1.8(d) Conflict of Interest: Current Clients: Specific Rules provides:

> Prior to the conclusion of representation of a client, a lawyer shall not make or negotiate an agreement giving the lawyer literary or media rights to a portrayal or account based in substantial part on information relating to representation.

Comment [9] to the rule states that the purpose behind such prohibition is that "measures suitable in the representation of the client may detract from the publication value of an account of the representation." In the case of a prosecutor, the concern is, among others, that a prosecutor may conduct the prosecution in such a way that does not serve the ends of justice or weakens the public confidence in the fairness of the trial. At oral argument, the State admitted that, were a literary contract in place today, Henderson would have an actual conflict of interest.

The trial court held that the cancellation of the contract weighs against finding an actual conflict of interest, and, likewise, the State argues that the cancellation of the contract precludes this court from finding that an actual conflict of interest exists. Notwithstanding the State's contention, this is a bell that cannot be unrung. Henderson signed a contract to author and publish a book about the Camm case prior to Camm's third retrial, and, in doing so, he permanently compromised his ability to advocate on behalf of the people of the State of Indiana in this trial.

Were we to hold otherwise, there would be more chapters to this book. As a result of having signed the literary contract, Henderson has provided Camm with a defense strategy that he would not otherwise have. Camm may now contend that Henderson's literary contract, albeit cancelled, and his commitment to write a book influenced his decision to prosecute Camm for a third time. Henderson has made himself an issue at trial, and thus cannot continue to serve as prosecutor in this case.

Our decision today does not rest solely on whether or not there was a contract in place. Henderson has established a per-

sonal agenda to both write this book and ensure that Camm is prosecuted. Henderson's own words are evidence of that agenda. In his email to his literary agent following reversal, Henderson stated: "I am committed to writing the book as is Damon. A tremendous amount of work has been done to this point. It's a great story that needs to be told.... In addition, as you and Damon have discussed, this is now a bigger story." Appellant's Ex. F at G. And, in a statement to the media, Henderson wrote that he was "more convinced now than ever that when this matter is completed, the unedited version of events needs to be told." Appellant's Ex. J at K.

As prosecutor, Henderson should not have a personal interest in this case separate from his professional role as prosecutor. In other words, Henderson cannot be both committed to writing a book about the Camm case and serve as prosecutor. Such a personal interest creates an actual conflict of interest with his duties as prosecutor.

In light of the facts of this case, Camm has shown clear and convincing evidence of an actual conflict of interest. By entering into a literary contract based in substantial part on information relating to a case *in fieri*, the prosecutor has created a personal interest that is in conflict with his duties as the People's representative. This conflict has and will undercut his ability to represent their interest in a just and fair trial due to issues created by him that did previously not exist. Cancellation of the contract does little to obviate Henderson's personal interest; and "[t]he public trust in the integrity of the judicial process requires us to resolve any serious doubt in favor of disqualification." *Jones v. State*, 901 N.E.2d 655, 658 (Ind.Ct.App.2009). Thus, we find that the trial court erred in denying Camm's petition for a special prosecutor.

We reverse and remand for the appointment of a special prosecutor and for further proceedings consistent with this opinion.

NAJAM, J., and BAILEY, J., concur.