**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Oct 16 2014, 9:16 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ANDREW J. SICKMANN**
Boston Bever Klinge Cross & Chidester
Richmond, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**IAN McLEAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MARK MIKESELL, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 89A01-1402-CR-51 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE WAYNE CIRCUIT COURT
The Honorable David A. Kolger, Judge
Cause No. 89C01-1206-MR-9

**October 16, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Judge**

## Case Summary and Issues

Following a jury trial, Mark Mikesell was convicted of murder and received a sentence of fifty-seven years imprisonment. Mikesell appeals his conviction and corresponding sentence, raising five issues for review: (1) whether the trial court erred by denying Mikesell's motion to appoint a special prosecutor; (2) whether there was sufficient evidence to support Mikesell's murder conviction, where Mikesell was the only eye witness and claimed self-defense; (3) whether the trial court abused its discretion by prohibiting Mikesell from introducing hearsay statements from a deceased witness; (4) whether Mikesell is entitled to a new trial due to improper communication by a juror and an alternate juror; and (5) whether the trial court abused its discretion in sentencing by declining to find certain facts in mitigation. We conclude the trial court did not abuse its discretion with respect to any of the issues raised by Mikesell and that the jury was presented with sufficient evidence to convict Mikesell of murder. Accordingly, we affirm.

## Facts and Procedural History

Around eight o'clock in the evening on May 26, 2012, two pedestrians noticed a man, Pat Perkins, slumped over a picnic table near South 10th Street in Richmond, Indiana, and flagged down a police officer who was driving past. The officer observed that Perkins's throat had been cut and that he was deceased. Additional officers arrived on scene and discovered a blood trail leading from Perkins's body to a nearby apartment at 113 South 10th Street. This apartment was shared by Perkins, Mikesell, and Sue Holliday.

When police arrived at the apartment, it was unoccupied. A search of the apartment revealed blood stains throughout the apartment's kitchen, bathroom, and floors. On the kitchen floor, police discovered a box cutter with Perkins's blood on it. An autopsy revealed that Perkins bled to death due to severance of the carotid artery, and his death was by way of homicide.

Troy Wilson, an acquaintance of Mikesell's, told police that approximately one week prior to Perkins's death, Mikesell angrily told Wilson in reference to Perkins: "One day I'm going to kill the mother fucker . . . I might just cut his throat." Transcript at 384.

For approximately a week after Perkins's death, police were unable to locate Mikesell or Holliday, both of whom had fled to Ohio together. However, a friend of Mikesell's who lived in Ohio eventually called a local police department and informed them that Mikesell wished to turn himself in. Richmond police took Mikesell into custody on May 31, 2012. Mikesell waived his Miranda rights and agreed to give a statement to the police.

According to Mikesell's statement, Perkins, Holliday, and Mikesell spent the evening of May 26 in their apartment, drinking alcohol and playing board games. Mikesell and Holliday retired to a bedroom, but Perkins kept coming into the room to antagonize and threaten Mikesell. Perkins then told Mikesell to get up and come to the kitchen. Mikesell got out of bed and grabbed a box cutter before heading to the kitchen to confront Perkins. Perkins lunged at Mikesell, and Mikesell swiped at Perkins with the box cutter, cutting Perkins's throat.

Mikesell claimed that after he cut Perkins, Perkins ran from the apartment. Mikesell changed clothes and washed the blood off of himself. Mikesell and Holliday left the apartment and went to Mikesell's brother's home. After speaking with Mikesell's brother, the two returned to the apartment where the police were already investigating. Mikesell and Holliday hung back and did not approach the police. The couple spent the night in a nearby park and fled to Ohio together the following day.

On June 1, 2012, the State charged Mikesell with murder, a felony. Wayne County public defenders Michelle Cook and Michael Dean entered appearances to represent Mikesell on June 8 and June 11, 2012, respectively. Dean and Cook worked jointly on Mikesell's case until June of 2013, at which time Dean took a job as a deputy prosecuting attorney with the Wayne County Prosecutor's Office ("WCPO"). Dean immediately notified the public defender's office and notified all of his clients, including Mikesell, of his new employment. WCPO distributed a written memorandum that announced Dean's employment, pointed out that he would be conflicted out of many cases, and outlined the office's policy of screening Dean out of any case with which he had a conflict. A copy of the WCPO memo was placed in every WCPO file with which Dean had a conflict, and the memo was distributed to every judge and magistrate in Wayne County. Further, a list of all of Dean's prior cases was posted in the WCPO. Dean had no involvement with Mikesell's case while at WCPO.

On August 5, 2013, Mikesell filed a petition to disqualify the WCPO and appoint a special prosecutor, claiming a conflict of interest existed. After a hearing on the petition, the trial court denied Mikesell's petition for a special prosecutor.

A jury trial was held in October 2013, and the jury found Mikesell guilty of murder. On December 12, 2013, Mikesell filed a motion for a new trial, alleging improper juror communication. An evidentiary hearing was held, and the trial court denied the motion. Mikesell was sentenced to fifty-seven years in the Indiana Department of Correction. This appeal followed. Additional facts will be provided as necessary.

Discussion and Decision

I. Appointment of a Special Prosecutor

Mikesell contends the trial court erred by denying his petition to appoint a special prosecutor for his case. A trial court's denial of a petition for appointment of a special prosecutor is reviewed for an abuse of discretion. Camm v. State, 957 N.E.2d 205, 209 (Ind. Ct. App. 2011), trans. denied. An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances or if the trial court misinterprets the law. Id.

> Indiana law provides that a judge "may" appoint a special prosecutor if:
>
> (A) a person files a verified petition requesting the appointment of a special prosecutor; and
> (B) the court, after:
>    (i) notice is given to the prosecuting attorney; and
>    (ii) an evidentiary hearing is conducted at which the prosecuting attorney is given an opportunity to be heard;
> finds by clear and convincing evidence that the appointment is necessary to avoid an actual conflict of interest . . . .

Ind. Code § 33-39-1-6(b)(2) (2013). "[A]n actual conflict of interest arises where a prosecutor places himself in a situation inherently conducive to dividing his loyalties between his duties to the State and his personal interests." Camm, 957 N.E.2d at 210.

Mikesell refers us to Indiana's Rules of Professional Conduct, arguing WCPO should be treated as a "law firm" and Dean's conflict of interest should be imputed to the entirety of WCPO. See Ind. Professional Conduct Rule 1.9 and 1.10. However, our supreme court has previously acknowledged that "the question of prosecutorial disqualification is not to be treated in the same manner in which attorney disqualification is determined in the civil context." Kubsch v. State, 866 N.E.2d 726, 732 (Ind. 2007), cert. denied, 553 U.S. 1067 (2008). This is because

> [t]he relationship between the prosecuting attorney and his sole client, the citizens of the circuit in which he serves, is fundamentally and decisively different from a lawyer and the ordinary attorney-client relationship. The lawyers in a law firm have a common financial interest in the case whereas the deputies in a prosecutor's office have an independent duty by law to represent the State of Indiana in criminal matters. Their relationship to each other, rather than pecuniary, is no more than sharing the same statutory duties . . . .

State ex rel. Goldsmith v. Superior Court of Hancock Cnty., 270 Ind. 487, 490, 386 N.E.2d 942, 945 (1979) (citation omitted). Therefore, the court concluded, the conflict of one deputy prosecutor will not have a financial or personal impact on other deputy prosecutors in the office. Id. Accordingly, the conflict of a deputy prosecutor does not require the recusal of the entire staff of the prosecutor. Id. By contrast, when the elected prosecutor has an actual conflict, his entire staff of deputies must be recused, because "a

prosecuting attorney exercises authority over and speaks through his deputies." Id. at 491, 386 N.E.2d at 945.

To summarize, Indiana's approach to the disqualification of prosecuting attorneys due to a conflict of interest has primarily been a "top-down" approach, whereby an elected prosecutor's conflict is imputed onto his deputies, but not vice-versa. Here, there is little question that Dean had an actual conflict of interest. However, Dean had no involvement in Mikesell's case once he became employed by WCPO as a deputy prosecuting attorney, and Dean's conflict is not imputed onto the other deputy prosecutors at WCPO. We conclude the trial court did not abuse its discretion by denying Mikesell's petition for a special prosecutor.[1]

## II. Sufficiency of Evidence

Mikesell claims the evidence presented against him was insufficient to support his murder conviction. Specifically, he asserts that because he was the only eye-witness to Perkins's death and because he claims his actions were in self-defense, a reasonable jury could not conclude that he was guilty of murder.

When reviewing a defendant's claim of insufficient evidence, the appellate court will neither reweigh the evidence nor judge the credibility of the witnesses, and we must respect "the jury's exclusive province to weigh conflicting evidence." McHenry v. State,

---

[1] Mikesell also argues that even if a special prosecutor is not generally required where a deputy prosecutor has a conflict, this case should be assessed independently and we should consider this case's impact on "[t]he public trust in the integrity of the judicial process." Appellant's Brief at 16 (citing Camm, 957 N.E.2d at 211 (quoting Jones v. State, 901 N.E.2d 655, 658 (Ind. Ct. App. 2009))). The specific facts of this case reinforce our belief that a special prosecutor was not necessary: WCPO took official steps to ensure that Dean had no involvement with Mikesell's case—or any other case with which Dean had a conflict—and WCPO's screening policy was made known to all relevant parties. This is the sort of behavior that should strengthen, rather than diminish, the public's confidence in the integrity of the process of criminal justice.

820 N.E.2d 124, 126 (Ind. 2005) (citation omitted).  We consider only the probative evidence and reasonable inferences supporting the verdict, and we must affirm "if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt." Id. (citation omitted).

Self-defense is a legal justification for an otherwise criminal act.  Miller v. State, 720 N.E.2d 696, 699 (Ind. 1999).  Under Indiana law, a person is justified in using deadly force and does not have a duty to retreat "if the person reasonably believes that that force is necessary to prevent serious bodily injury to the person . . . ."  Ind. Code § 35-41-3-2(c).  Self-defense is established if a defendant:  "(1) was in a place where the defendant had a right to be; (2) did not provoke, instigate, or participate willingly in the violence; and (3) had a reasonable fear of death or great bodily harm."  Brand v. State, 766 N.E.2d 772, 777 (Ind. Ct. App. 2002), trans. denied.  When a defendant claims self-defense, the State has the burden of disproving at least one of the elements beyond a reasonable doubt. Id.  The State may do so either by affirmatively rebutting the claim of self-defense or by simply relying on the sufficiency of evidence presented in its case in chief.  Id.

Mikesell essentially argues that because his version was the only first-hand account of Perkins's death, the jury could not have reasonably found that the State disproved Mikesell's self-defense claim.  We disagree.

The State presented evidence that only a week before Perkins's death, Mikesell told another individual:  "One day I'm going to kill the mother fucker [Perkins] . . . I might just cut his throat."  Tr. at 384.  Further, Mikesell's conduct after Perkins's death

was not that of an innocent man. Mikesell did not call for an ambulance or attempt to get help for Perkins, and Mikesell did not call the police or approach the investigating officers he saw outside his apartment on the night of the incident. Instead, Mikesell fled to Ohio and was on the run for approximately a week after he killed Perkins. See Seeley v. State, 547 N.E.2d 1089, 1092 (Ind. 1989) ("A jury may consider evidence of flight of the accused immediately after the commission of a crime as evidence of his consciousness of guilt.").

Moreover, as the State points out, Mikesell's own version of events—assuming the jury believed them—may not have supported Mikesell's self-defense claim. In Mikesell's statement to police, he said he "didn't look" but merely "assumed [Perkins] had a knife" when he lunged and Mikesell cut his throat with the box cutter. It is entirely possible that the jury did not believe that deadly force was necessary and reasonable under those circumstances. See Brand, 766 N.E.2d at 777 ("The amount of force used to protect oneself must be proportionate to the urgency of the situation. Where a person has used more force than necessary to repel an attack the right to self-defense is extinguished, and the ultimate result is that the victim then becomes the perpetrator.") (citation and quotation marks omitted).

Mikesell's sufficiency argument is simply an improper request that we place ourselves in the jury's shoes and reweigh the evidence in this case. We conclude there was sufficient evidence for the jury to convict Mikesell of murder.

## III. Hearsay

Next, Mikesell argues that hearsay statements made by Holliday to police officers concerning Perkins's death should have been admitted at trial. However, Mikesell's argument stems from the trial court's pre-trial ruling that the hearsay statements would be excluded. See Appellant's Appendix at 69-70. As the State points out, it appears Mikesell did not attempt to admit these statements during trial or make an offer of proof. Consequently, Mikesell has failed to preserve this issue for appellate review. See Gibson v. Bojrab, 950 N.E.2d 347, 350-51 (Ind. Ct. App. 2011) (holding error was not preserved where pre-trial motion in limine precluded certain evidence and the appellant did not attempt to introduce the evidence at trial); see also Hollowell v. State, 753 N.E.2d 612, 615-16 (Ind. 2001) ("Absent either a ruling admitting evidence accompanied by a timely objection or a ruling excluding evidence accompanied by a proper offer of proof, there is no basis for a claim of error.").

## IV. Improper Juror Communication

The federal and Indiana constitutions guarantee a criminal defendant the right to trial before an impartial jury. See U.S. Const. amend. VI; Ind. Const. art. 1, § 13. Mikesell contends that right was violated and that the trial court erred by denying his motion for a new trial based on alleged jury misconduct.

Sometime after trial, Mikesell's defense counsel got wind of the fact that an alternate juror had spoken during jury deliberations at Mikesell's trial. Believing he may have been prejudiced, Mikesell filed a motion with the trial court to set aside the jury verdict and declare a mistrial. A hearing was set on the motion. Carrie Brittenham, the

juror who was allegedly influenced, and Scott Bell, the presiding juror, testified at the hearing.

According to Brittenham, she was hesitant regarding her verdict when deliberations began. After discussion amongst the jurors, Brittenham indicated that she was still uncertain and wished to continue reviewing the evidence, and an alternate juror told her that it was "black and white." Tr. at 868. The alternate juror told Brittenham that her son was in prison and "sometimes you just have to do what you have to do." Id. Then after further deliberation, Brittenham requested to reread Mikesell's statement to police, at which point the alternate juror again told her that the case was "black and white." Id. Brittenham testified she responded that she "wasn't going to hurry and rush and make a decision due to anything that may have happened to [the alternate juror] and her family personally." Id. at 869. Brittenham did testify, however, that she came to her verdict of guilty "[p]robably quicker" than she would have if the alternate juror had not spoken to her. Id.

Bell also testified at the hearing and gave a version of events that conflicted with Brittenham's. According to Bell, the jury began deliberations by reviewing the jury instructions, discussing the evidence, and considering the possibility of lesser included offenses. After some time, the discussion reached a pause, and Brittenham seemed to need more time to reach a decision. It was then that the alternate juror spoke to Brittenham, telling her "your opinion is important, and you need to . . . be sure . . . And that you need to weigh all the evidence and if you feel strongly one way, don't let anyone change your mind." Id. at 884. At that time, Bell and other members of the jury

reminded the alternate juror that she was not allowed to participate in the deliberations. The alternate juror did not speak again until after every member of the jury had voted to find Mikesell guilty of murder. After the jury voted, the alternate juror again spoke to Brittenham, saying "I have a son who is in prison and who has been through the Court system. . . . Sometimes we have to just let the system do its job." Id. at 885.

The trial court issued a written order denying Mikesell's request for a new trial. The trial court acknowledged that the Brittenham and Bell presented conflicting evidence regarding the communications that took place during deliberations. The trial court apparently credited Bell's version of events, finding "the alternate juror merely made encouraging statements to Brittenham, and further assured her that people must be held accountable for their misdeeds." Appellant's App. at 225. Ultimately, the trial court concluded Mikesell was not prejudiced by the alternate juror's conduct.

"A trial court is in the best position to evaluate whether a mistrial is warranted because it can assess first-hand all relevant facts and circumstances and their impact on the jury." Ramirez v. State, 7 N.E.3d 933, 935 (Ind. 2014). Thus, a trial court's decision to deny a defendant's motion for a mistrial is reviewed for an abuse of discretion. Id.

To preserve the impartiality of the jury, our justice system prohibits unauthorized contacts and communications with jurors. Id. This includes communication with alternate jurors during the deliberation process. Griffin v. State, 754 N.E.2d 899, 903 (Ind. 2001). A defendant who claims that his jury has been tainted by improper communications is entitled to a presumption of prejudice if he shows by a preponderance of the evidence: "(1) extra-judicial contact or communications between jurors and

unauthorized persons occurred, and (2) the contact or communications pertained to the matter before the jury." Ramirez, 7 N.E.3d at 939. If this showing is made, the burden then shifts to the State to rebut the presumption of prejudice by showing that the communications were harmless. Id.

Here, the trial court found that communication between a juror and an unauthorized person did occur and that the communication pertained to matters pending before the jury. However, the trial court nonetheless concluded Mikesell suffered no actual prejudice as a result of the communication between Brittenham and the alternate juror. "Where there is a factual conflict regarding the existence or content of extra-judicial juror contact, it is within the discretion of the trial court to determine whether the evidence presented showed any irregularity." Currin v. State, 497 N.E.2d 1045, 1046 (Ind. 1986). Brittenham's testimony regarding the impact of the alternate juror's comments was equivocal, and the trial court resolved the issue of conflicting evidence as to the content of the communications by crediting Bell's testimony. It was within the trial court's discretion to make such a determination. Given that the trial court concluded the communications from the alternate juror to Brittenham were "encouraging," Appellant's App. at 225, we cannot conclude the trial court abused its discretion when it determined these communications were harmless.

V. Sentencing

Finally, Mikesell contends the trial court abused its sentencing discretion by failing to consider significant mitigating factors.[2] Mikesell believes the trial court should have found three factors in mitigation: "(1) Mikesell was provoked; (2) Perkins induced the offense; (3) and the crime was the result of circumstances unlikely to recur." Appellant's Brief at 32.

"[S]entencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion." Anglemyer v. State, 868 N.E.2d 482, 490 (Ind. 2007), clarified on reh'g, 875 N.E.2d 218 (Ind. 2007). An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances. Id. The trial court may abuse its discretion in sentencing by:

> (1) failing to enter a sentencing statement, (2) entering a sentencing statement that explains reasons for imposing the sentence but the record does not support the reasons, (3) the sentencing statement omits reasons that are clearly supported by the record and advanced for consideration, or (4) the reasons given in the sentencing statement are improper as a matter of law.

Kimbrough v. State, 979 N.E.2d 625, 628 (Ind. 2012) (citing Anglemyer, 868 N.E.2d at 490-91). Where a defendant alleges the trial court failed to find a mitigating factor, it is the defendant's burden to establish that the mitigating evidence is both significant and clearly supported by the record. Anglemyer, 868 N.E.2d at 493.

The transcript of the sentencing hearing shows that the trial court considered each of Mikesell's proposed mitigators and concluded the evidence did not support a finding

---

[2] Mikesell's brief makes slight reference to the appropriateness of his sentence in light of the nature of his offense and his character. See Ind. Appellate Rule 7(B). However, his argument is confined to alleged mitigating facts not found by the trial court.

that the proposed mitigators existed.  With respect to Mikesell's contentions that he was provoked and that Perkins induced the offense, the trial court discussed Mikesell's arguments and noted the only evidence supporting them was Mikesell's account of the incident, and there was no evidence at the scene of the crime indicating that Perkins was ever armed or otherwise supporting Mikesell's claim of self-defense.  Specifically, the trial court noted "the jury didn't buy . . . the defense of self-defense and quite frankly, based upon the facts that I just recited I can't find it either."  Tr. at 916.  We do not believe Mikesell has met his burden of establishing that either of his first two proposed mitigators were clearly supported by the record.

The trial court also discussed Mikesell's contention that his offense was the result of circumstances unlikely to recur.  The trial court conceded that alcohol most likely played a role in the incident.  However, the trial court also pointed out Mikesell's history of alcohol-related offenses.  The trial court concluded that Mikesell was ultimately responsible for the consequences of his alcohol consumption and that there was no indication that Mikesell would stop drinking.  Although the trial court was vague on this point, our reading of the transcript is that the trial court gave Mikesell's third proposed mitigating factor only minimal weight.  The trial court did not abuse its discretion with regard to Mikesell's argument that his offense was the result of circumstances unlikely to recur.  See Anglemyer, 868 N.E.2d at 491 (stating "a trial court can not now be said to have abused its discretion in failing to 'properly weigh' [aggravating and mitigating] factors.").

Conclusion

We conclude the trial court did not abuse its discretion by declining to appoint a special prosecutor; refusing to admit hearsay statements; denying Mikesell's motion for a new trial; or declining to find certain mitigators proposed by Mikesell at sentencing. Further, we conclude there was sufficient evidence to support Mikesell's conviction for murder. Therefore, we affirm.

Affirmed.

BAKER, J., and KIRSCH, J., concur.