# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**ANDREW J. SICKMANN**
Boston Bever Klinge Cross & Chidester
Richmond, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JASON D. SWALLOW, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 89A01-1401-CR-24 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE WAYNE CIRCUIT COURT
The Honorable David A. Kolger, Judge
Cause No. 89C01-1204-MR-8

**October 28, 2014**

**OPINION FOR PUBLICATION**

**MAY, Judge**

Jason D. Swallow appeals his conviction of murder.[1] He raises four issues on appeal:

1.      Whether a special prosecutor should have been appointed when Swallow's public defender withdrew as counsel and became employed by the Wayne County Prosecutor;

2.      Whether permitting the jury to hear Swallow's recorded statement that he was a drug dealer violated Indiana Evidence Rule 404(b);

3.      Whether Swallow's conviction is supported by sufficient evidence; and

4.      Whether his sixty year sentence is inappropriate.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Swallow and his girlfriend, Elisha Powell, went to a bar to drink with friends on April 11, 2012. They returned to their apartment later that night and continued drinking. At some point, the couple argued about whether Swallow wanted to rekindle a relationship with the mother of his child or was seeing other women. At around 7:00 a.m. on April 12, 2012, Swallow shot Powell in the head as she sat on the couch in their living room.

After shooting Powell, Swallow took his gun and rode his bicycle to his mother's house. He hid the gun in a box in the basement and then returned to their apartment. Swallow called 911 and told the operator he had just returned home and discovered Powell's body.

Swallow told the 911 operator, and later others, that he left the house to cool down

---

[1] Ind. Code § 35-42-1-1(1).

after he and Powell argued.  He told them he rode his bicycle around and smoked cigarettes for approximately half an hour.  He suggested someone might have broken into the house while he was gone and killed Powell.  He gave a recorded statement to that effect on the morning of the murder.  Toward the end of that statement, police told Swallow they were searching his house for a gun and they expressed doubt that a burglar killed Powell with Swallow's gun.  Swallow then told police that he was a drug dealer and suggested that some drug addicts and others were mad at him and knew where he lived.  He said it would not be the first time that someone had tried to rob him.

Later that afternoon, police found the murder weapon and Swallow gave police a second recorded statement.  He said the gun discharged by itself when he picked it up to take it to the bedroom.  When the gun went off he was sitting on the couch with Powell and she was looking at the television.  He insisted his finger had not been on the trigger and the shooting was an accident.  He denied that he and Powell had argued that night, and he stated he lied about it to provide a reason that he left the house.  He told police he panicked, hid the gun, and lied about events because he was scared.

At trial, Swallow testified the gun discharged by accident when he picked it up to go to bed.  He said the gun fired when he pulled it out from under a couch cushion as Powell leaned forward to place items on the floor.  He testified he didn't know his finger was on the trigger.

There was testimony at trial that Powell was shot in her left temple with a 9mm handgun.  The gun was less than two and one-half feet from her head.  The bullet entered her

3

left temple and exited the back right side of her head, travelling in a downward motion, and it lodged in the wall behind her head. Most likely the gun was held in front of and slightly above Powell's head when it was fired.

Testimony at trial also revealed the 9mm handgun had two safeties, a manual safety and a passive safety on the rear of the grip that must be depressed before the gun would fire. The gun had a "stout" trigger that required about five pounds of pressure to be applied to the trigger for it to fire, making it difficult to accidentally fire. (Tr. at 587.) Two firearms experts, who testified at trial, performed a variety of tests trying to get the gun to malfunction and fire without the trigger being depressed. In those tests, the gun never fired without the trigger being pressed.

Attorney Michael Dean represented Swallow from April 2012 until June of 2013. During that time, he met with Swallow approximately ten times, conducted six depositions, and filed motions on Swallow's behalf. In June 2013 Dean accepted an offer of employment from the prosecutor's office. Dean stopped actively representing and communicating with his defense clients and took steps to transfer their files to other attorneys. The prosecutor issued a memo to his deputies stating Dean was to have no involvement in any case that he worked on while a public defender. That memo was posted in a public place in the office along with a list of Dean's prior cases, and a copy of the memo was placed in each case file. Prior to trial, Swallow requested that a special prosecutor be appointed. He alleged Dean's employment with the prosecutor's office created a conflict of interest. The trial court denied the motion.

A jury found Swallow guilty, and the trial court sentenced him to sixty years.

## DISCUSSION AND DECISION

1.      Special Prosecutor

Indiana Code § 33-39-1-6(b)(2) provides:

(b) A circuit or superior court judge: . . . (2) may appoint a special prosecutor if: (A) a person filed a verified petition requesting the appointment of a special prosecutor; and (B) the court, after: (i) notice is given to the prosecuting attorney; and (ii) an evidentiary hearing is conducted at which the prosecuting attorney is given an opportunity to be heard; finds by clear and convincing evidence that the appointment is necessary to avoid an actual conflict of interest.

Denial of a petition for a special prosecutor is reviewed for an abuse of discretion. *Camm v. State*, 957 N.E.2d 205, 209 (Ind. Ct. App. 2011), *trans. denied*.

The purpose of the special prosecutor statute is to protect the State's interest in preserving the public confidence in the criminal justice system and ensuring that the prosecutor serves the ends of justice. *Id.* An actual conflict of interest arises where a prosecutor places himself in a situation inherently conducive to dividing his loyalties between his duties to the State and his personal interests. *Id.* at 210. The test is that a lawyer must be disqualified if the controversy involved in the pending case is substantially related to a matter in which the lawyer previously represented another client. *State v. Tippecanoe Cnty. Court*, 432 N.E.2d 1377, 1378 (Ind. 1982). We must therefore determine whether the relationship between Dean and Swallow gave rise to an actual conflict that resulted in prejudice to Swallow. *Id.*

Dean represented Swallow for over a year, participated in proceedings on behalf of

5

Swallow, obtained confidential information through his representation, and met with Swallow on multiple occasions. His knowledge does not, however, disqualify the entire Wayne County Prosecutor's office. *See State ex rel. Goldsmith v. Superior Court of Hancock County*, 270 Ind. 487, 491, 386 N.E.2d 942, 945 (Ind. 1979) (withdrawal of one deputy prosecutor did not disqualify the entire staff of the prosecutor's office). The question is whether Dean shared with the prosecution confidential information he obtained through his representation of Swallow. *See Williams v. State*, 631 N.E.2d 485, 488 (Ind. 1994) (appointment of a special prosecutor not required when deputy prosecutor, who had previously represented Williams' co-defendant, did not disclose to the prosecutor any written or verbal information gained during her representation, and she and the prosecutor had never discussed any details regarding the pending prosecution of Williams).

At the hearing on the motion requesting a special prosecutor, Dean testified that once he began working at the prosecutor's office, he was not allowed to have contact with Swallow's file. He testified that Swallow's case "has never even been mentioned to me by anybody or mentioned in my presence," (Tr. at 65), and he had not talked about it to any staff, the Prosecutor, or any of the Deputy Prosecutors. He testified that he had not divulged any confidential information he learned about Swallow while he represented him. *Id.* at 66.

As no confidential information Dean obtained was shared with the prosecutor's office, the trial court did not err in denying the motion to appoint a special prosecutor.

2. Swallow's Statement He Was a Drug Dealer

During his first recorded statement, Swallow told police someone must have entered

6

his apartment and shot Powell after he left. When the police challenged that statement, Swallow told police he was a drug dealer, in an effort to suggest why someone might break in and shoot Powell. Over Swallow's objection, this statement was played to the jury. During Swallow's testimony, he admitted he fabricated this claim for the purpose of suggesting a possible motive for another assailant.

Swallow argues admission of his recorded statement violated Indiana Rules of Evidence 404(b)(1) and 403. Rule 404(b)(1) provides "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Rule 403 provides a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence."

The admissibility of evidence is within the sound discretion of the trial court. *Clark v. State*, 6 N.E.3d 992, 996 (Ind. Ct. App. 2014). We will reverse only if there is an abuse of that discretion. *Id.* An abuse of discretion may occur if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Id.* The trial court's ruling is presumptively correct, and a challenger bears the burden on appeal of persuading us that the court erred in its exercise of discretion. *See Sears Roebuck & Co. v. Manuilov*, 742 N.E.2d 453, 457 (Ind. 2001) (addressing Rule 403).

The trial court found Swallow's statements were inextricably intertwined with his

7

attempt to mislead the police about the crime and thus were relevant. After the statement was entered, the trial court admonished the jury, explaining the limited use of the evidence:

> Please understand this evidence is not being offered to prove [Swallow] is a bad person or a criminal. During trials, it is sometimes necessary to present evidence of other alleged wrongs or bad acts solely to provide jurors with some context or sense of the surrounding facts or circumstances. As with any other evidence which is presented during trial, you may choose to believe or disbelieve such evidence as you see fit. Under no circumstances are you to consider such evidence as evidence that [Swallow] committed the crime for which he's charged in this case.

(Tr. at 456.) The trial court did not err in admitting Swallow's statement. *See Embry v. State*, 923 N.E.2d 1, 10 (Ind. Ct. App. 2010) (probative value of uncharged misconduct was not so substantially outweighed by its potential for unfair prejudice that it should have been excluded under Rule 403 when trial court gave a limiting instruction and admonished the jury that the defendant's prior misconduct was not admitted to demonstrate character or prove action in conformity therewith), *trans. denied*.

3.    Insufficient Evidence

On a challenge to the sufficiency of evidence to support a conviction, we do not reweigh evidence or judge the credibility of witnesses; we respect the jury's exclusive province to weigh conflicting evidence. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005). We consider only the probative evidence and reasonable inferences supporting the verdict, and must affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Id.*

8

Swallow contends his murder conviction was not supported by sufficient evidence because he was the only witness to Powell's death. He offers no legal authority to support the apparent premise that a murder conviction may not be obtained unless persons other than the killer are present when the murder is committed, and we decline Swallow's invitation to adopt such a rule.

Swallow admitted to shooting Powell in the head, albeit accidentally. The jury was not required to accept his explanation for what occurred, especially given his ever-changing story and the forensic evidence indicating Powell was sitting upright when shot, and not leaning over as suggested by Swallow, and indicating the 9 mm used by Swallow could not have gone off without the trigger being pulled. The jury could reasonably conclude Swallow knowingly or intentionally killed Powell and, in an attempt to cover up his crime, concocted the claim of accidental shooting. There was ample evidence to support Swallow's conviction.

4.    Inappropriate Sentence

At the time of Swallow's offense, the advisory sentence for murder was fifty-five years, with a sentencing range from forty-five to sixty-five years. *Johnson v. State*, 986 N.E.2d 852, 856 (Ind. Ct. App. 2013). The trial court sentenced Swallow to sixty years.

Although a trial court may have acted within its lawful discretion in determining a sentence, Article VII, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of a sentence through Indiana Appellate Rule 7(B), which provides that a court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the

9

nature of the offense and the character of the offender." *Reid v. State*, 876 N.E.2d 1114, 1116 (Ind. 2007). The burden is on the defendant to persuade us that his sentence is inappropriate. *Id.*

We cannot find Swallow's sentence inappropriate in light of the nature of the offense.[2] Swallow argued with Powell and then shot her in the head. He left the scene, hid the murder weapon, and then misled the police several times regarding how the shooting occurred. The trial court did not err in sentencing Swallow to sixty years. *See Rhoton v. State*, 938 N.E.2d 1240, 1248 (Ind. Ct. App. 2010) (sixty-five year sentence for murder was appropriate when Rhoton killed "a reclining or possibly sleeping man" in what he conceded was "an utterly senseless crime," even though he had "harbored no ill will toward the victim" and "had even helped him out on several occasions"), *trans. denied*.

## CONCLUSION

The trial court was not obliged to appoint a special prosecutor, admitting Swallow's statement he was a drug dealer was not error, there was sufficient evidence to support the conviction, and Swallow's sentence was appropriate. We accordingly affirm.

Affirmed.

KIRSCH, J., and BAILEY, J., concur.

---

[2] As Swallow has not demonstrated his sentence is inappropriate based on the nature of his offense, we need not address his character. *See, e.g., Williams v. State,* 891 N.E.2d 621, 633 (Ind. Ct.App.2008) (revision of a sentence under Indiana Appellate Rule 7(B) requires the appellant to demonstrate that his sentence is inappropriate in light of *both* the nature of his offenses and his character).

10